UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD BROWN,

Plaintiff,

-against-

JOSE AMARANTE, LUIS DATIZ, THE NEW YORK CITY TRANSIT AUTHORITY ADJUDICATION BUREAU, "JOHN DOE," and "JANE DOE," the last two names being fictitious, said parties intended being tenants or occupants, if any, having or claiming an interest in, or lien upon, the premises described in the complaint,

Defendants.

23-CV-3514 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

In this foreclosure action, Plaintiff Edward Brown seeks to recover on the mortgage encumbering a Bronx property owned by Defendants Jose Amarante and Luis Datiz. On January 12, 2026, the Court presided over a one-day bench trial to adjudicate Plaintiff's claim and Defendants' defenses. Plaintiff testified on his own behalf, while Defendants testified as adverse witnesses. At the end of trial, the Court directed both parties to submit additional briefing expanding upon their arguments. Now, the Court issues its findings of fact and conclusions of law in accordance with Rule 52(a)(1) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court ultimately finds in Defendants' favor on their affirmative defense under Section 1306 of the New York Real Property Actions and Proceedings Law, and as a result, Defendants are entitled to attorneys' fees.

## FINDINGS OF FACT

The Court makes the following findings of fact based on the testimony and exhibits presented at trial. Fed. R. Civ. P. 52(a)(1). Many, if not most, of the facts set out below are

undisputed. To the extent a party objected to any of the evidence cited to support these facts, the Court either overruled that objection at trial or does so now. The Court need not and does not resolve any remaining objections.

This is a foreclosure action. On November 30, 2006, Defendants Jose Amarante ("Amarante") and Luis Datiz ("Datiz") (collectively, "Defendants") purchased real property located at 2324 Fish Avenue (a/k/a 23-24 Fish Avenue) in the Bronx, New York 10469 (the "Property"). ECF No. 74-1 ("Tr.") at 107:22–108:15, 142:19–2; *see also* P-1.[1] In order to purchase the property, Datiz executed a note for $440,800.00 (the "Note") in favor of non-party Lend America, secured by a mortgage against Defendants' Property (the "Mortgage"). *See* P-1; P-2. Both Datiz and Amarante executed the Mortgage. P-2 at 15. Over the years that followed, the Mortgage was assigned numerous times to multiple entities. *See* P-3. Records from loan servicers Saxon Mortgage Services, Carrington Mortgage Services, Lend America, Rushmore Loan Management Services, Planet Home Lending, and FCI Lender Services ("FCI") document the loan's status over these years. *See* P-8; P-9. Finally, on March 7, 2023, the Mortgage was assigned to Plaintiff Edward Brown ("Plaintiff" or "Brown"). P-3 at 80–85. Datiz resided at the Property intermittently for a couple of years; Amarante continues to live there to this day. Tr. at 118:25–119:5, 139:3–4, 144:1–2.

On January 26, 2023, Plaintiff's counsel mailed both Amarante and Datiz default notices. P-4; *see also* ECF No. 35 at 3 (noting that Plaintiff's counsel was acting on behalf of Plaintiff's successor in interest, who was the noteholder at that time). These notices—which the Court refers to as "Section 1304 notices" because they were mailed pursuant to Section 1304 of the New York Real Property Actions and Proceedings Law ("RPAPL")—stated that, as of January

[1] Plaintiff's trial exhibits are denoted as "P-[x]" throughout this Opinion and Order.

25, 2023, Defendants' home loan was 4,317 days and $551,187.53 in default. *See* P-4 at 3. The notices calculated how many days the loan had been in default as of April 1, 2011—the loan's "Advanced Delinquency Date." *See id.*; Tr. at 41:4–13. Previously, the loan had been delinquent as of January 1, 2008 (the "Delinquency Date"), but had been administratively advanced to come due on April 1, 2011, in order to comply with New York's statute of limitations period. Tr. at 41:14–42:20; *see also* P-9.

On January 27, 2023, one day after mailing the Section 1304 notices, Plaintiff filed a document with New York State's Department of Financial Services that listed the terms of the Mortgage, "Luis Datiz" as the "Borrower's Name"; "23-24 Fish Avenue, Bronx, NY 10469" as the "Address"; and "9999999999" as the "Borrower's Phone No." *See* P-6. The Court refers to this document as the "Section 1306 filing" because it was filed pursuant to RPAPL Section 1306. *See id.*

On April 27, 2023, Plaintiff Brown commenced this action to foreclose the mortgage. ECF No. 1. The Complaint acknowledged that two prior actions in Bronx County Supreme Court—filed on April 27, 2017, and February 26, 2020, respectively—had attempted to foreclose the mortgage but had been unsuccessful. ECF No. 1 ¶ 27; *see also* ECF Nos. 30-4 to 30-5. A few days later, on May 1, 2023, Plaintiff filed an amended complaint. ECF 6. This case was then referred to Magistrate Judge Robert W. Lehrburger for general pretrial purposes and all dispositive motions. ECF No. 8. On May 31, 2023, Defendants filed an answer to the amended complaint with counterclaims. ECF No. 9. On June 13, 2023, Plaintiff filed a reply to Defendants' counterclaims. ECF No. 12.

The following year, on March 11, 2024, Plaintiff moved for summary judgment. ECF No. 28. Defendants opposed the motion on April 11, 2024. ECF No. 30. Plaintiff replied on May 16, 2024. ECF No. 34. On November 8, 2024, Judge Lehrburger issued a Report and

Recommendation recommending that the Court deny summary judgment on Plaintiff's foreclosure claim; grant summary judgment in Plaintiff's favor on Defendants' First through Third and Fifth through Eleventh affirmative defenses and Defendants' first counterclaim; and deny summary judgment as to Defendants' Fourth and Twelfth affirmative defenses, two statutory defenses, and second counterclaim for attorneys' fees. ECF No. 35 at 2. On November 21, 2024, Plaintiff timely objected to the Report and Recommendation. ECF No. 36 ("Obj."). On December 4, 2024, Defendants filed timely responses to Plaintiff's objections. ECF No. 38.

On March 27, 2025, the Court adopted Judge Lehrburger's Report and Recommendation in full. ECF No. 46. Accordingly, Defendants' affirmative defenses pursuant to RPAPL Section 1306 and RPAPL Section 1331 survived, alongside Defendants' statutory defenses pursuant to RPAPL Section 1302(1)(b) and New York Real Property Law ("RPL") Section 421. *Id.* Defendants' counterclaim for attorneys' fees also survived summary judgment. *Id.*

On January 12, 2026, the Court conducted a bench trial regarding Plaintiff's foreclosure claim and these remaining claims and defenses. At the start of trial, as discussed during the final pretrial conference, the Court ruled that Plaintiff's compliance with RPAPL Section 1302(1)(b) was no longer an issue for trial or in this matter. Tr. at 3:18–23. And the parties stipulated on the record that RPAPL Section 1331 was also no longer at issue. Tr. at 4:2–21. What was left to argue, then, was Plaintiff's foreclosure claim, Defendants' defenses under RPAPL Section 1306 and RPL Section 421, as well as Defendants' counterclaim for attorneys' fees. Plaintiff testified on his own behalf at trial, while Defendants testified as adverse witnesses. At the end of trial, the Court directed both parties to submit additional briefing expanding upon their arguments. Tr. at 162:4–163:7.

After trial, Plaintiff submitted a second amended complaint, and the parties filed a joint letter regarding their willingness to be referred for a settlement conference. ECF Nos. 66–67.

Although only Plaintiff was amenable to such a referral, the Court nevertheless ordered the parties to a settlement conference before Magistrate Judge Lehrburger, which took place on March 11, 2026. *See* ECF Nos. 69–70, 75. The parties failed to reach a settlement.

All the while, the parties continued to submit their post-trial memoranda. Plaintiff filed his initial brief on February 12, 2026. ECF No. 74 ("Pl. Mem."). Defendants responded one month later, on March 12, 2026, opposing Plaintiff's brief on default and damages, and presenting their affirmative defenses. ECF No. 76 ("Defs. Mem."). On March 18, 2026, Plaintiff then replied to Defendants' opposition on default and damages, and opposed Defendants' affirmative defenses. ECF No. 77 ("Pl. Reply"). Defendants, in turn, replied on April 2, 2026. ECF No. 78 ("Defs. Reply"). Finally, months later, Plaintiff filed a letter to bring two recent decisions—one in the First Department Appellate Division and the other in Nassau County's Supreme Court—to the Court's attention. ECF No. 79.

Broadly, Plaintiff argues that the trial record demonstrates that Defendants are in default, Plaintiff is due damages, and Defendants' affirmative defenses do not prevent the Court from granting judgment in his favor. He asks the Court to deem the subject loan in default, award him damages—including the loan's principal balance, accrued interest, escrow advances, inspection costs, and attorneys' fees—and grant a Judgment of Foreclosure and Sale appointing a referee to sell the Property. Pl. Mem. at 17. Defendants, on the other hand, argue that Plaintiff has failed to establish his *prima facie* case for foreclosure and that each of their affirmative defenses—under RPAPL Section 1306 and RPL Section 421—likewise forecloses judgment in Plaintiff's favor. *See generally* Defs. Mem. They ask the Court to enter judgment in their favor, dismiss the action with prejudice, and award them attorneys' fees. *Id.* at 2.

For the reasons stated below, the Court finds that although Plaintiff has established his *prima facie* case for foreclosure by a preponderance of the evidence, Defendants' defense under

RPAPL Section 1306 prevails. Therefore, the Court enters judgment in favor of Defendants and determines that Defendants are entitled to their attorneys' fees.

## CONCLUSIONS OF LAW

"In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). At such a bench trial, the "[p]laintiff bears the burden of proof to present evidence in support of the allegations set forth in his Complaint and to prove his claims by a preponderance of the evidence." *Chepilko v. Henry*, 722 F. Supp. 3d 329, 343 (S.D.N.Y. 2024) (citing *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 232 (S.D.N.Y. 2013)). "The burden of proving a fact by the preponderance of the evidence 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence.'" *Id.* (quoting *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997)). "As the finder of fact, the Court is entitled to make credibility findings of the witnesses and testimony." *C=Holdings*, 992 F. Supp. 2d at 232.

Here, the Court first finds that Plaintiff has proven that Defendants are in default with respect to the mortgage on the Property. However, the Court determines that Plaintiff's violation of Section 1306 requires the Court to find in favor of Defendants. Specifically, the Court concludes that Defendants' loan is a "home loan," that Plaintiff's Section 1306 filing was deficient, and that the statute's plain language and strict construction necessitate upholding this defense. Having concluded that it must find in Defendants' favor pursuant to Section 1306, the Court does not address Defendants' defense under RPL Section 421. And finally, the Court determines that Defendants—as the successful party in this action—are entitled to their fees under RPL Section 282.

## I. Plaintiff Has Proven Defendants Are in Default on the Loan

"To establish a prima face case in a mortgage foreclosure action under New York law, the plaintiff must produce (1) the mortgage, (2) the unpaid note, and (3) evidence of default." *CIT Bank, N.A. v. Neris*, 605 F. Supp. 3d 521, 525 (S.D.N.Y. 2022). Here, Defendants do not dispute the first two elements: They acknowledge that Plaintiff has produced both the Mortgage, *see* P-2, and the underlying Note, *see* P-1. Instead, Defendants focus their arguments on the third element and argue that Plaintiff has failed to meet his burden to prove default through admissible evidence.

Specifically, Defendants stress that the loan servicing records Plaintiff introduced as Exhibits P-7, P-8, and P-9 at trial (the "Business Records" or "Records") are inadmissible and insufficient to establish default. *See* Defs. Mem. at 16–19; Defs. Reply at 2–10. These documents were created by external loan servicers—such as Plaintiff's current loan servicer, FCI—and other outside entities, and many predate Plaintiff's involvement with the loan. *See* P-7; P-8; P-9. Plaintiff moved to enter these exhibits into evidence as business records under Rule 803(6) of the Federal Rules of Evidence, Defendants objected, and the Court conditionally admitted the documents pending resolution of Defendants' objections. *See* Tr. at 16:18–18:3, 21:2–15, 22:16–23:19, 25:5–20, 29:14–30:7. The Court now rules on those objections.

Under the Federal Rules of Evidence, "hearsay evidence is generally not admissible," but "Rule 803(6) makes a business-records exception for '[a] record of an act, event, condition, opinion, or diagnosis if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;

> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.'"

*United States v. Conde*, 134 F.4th 82, 87–88 (2d Cir. 2025) (quoting Fed. R. Evid. 803(6)) (alteration in original).

"Rule 902(11), referred to in Rule 803(6)(D)," applies to domestic records like those at issue and "provides, as relevant here, that 'the original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court,' is 'self-authenticating'"—meaning the record "requires no extrinsic evidence of authenticity in order to be admitted." *Id.* at 88 (quoting Fed. R. Evid. 902(11)) (cleaned up). "Accordingly, Rules 803(6) and 902(11) create a framework for the authentication and admission of business records 'without the expense and inconvenience of producing time-consuming foundation witnesses.'" *Id.* (quoting *United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014)).

"The principal precondition to admission of documents as business records pursuant to [Rule] 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *United States v. Palmer*, No. 24-CR-67 (NSR), 2025 WL 2978633, at *9 (S.D.N.Y. Oct. 21, 2025) (quoting *Conde*, 134 F.4th at 87–88) (alteration in original). Therefore, "so long as [the] custodian or other qualified witness testifies that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the record," the record may be admitted. *United States v. Figueroa*, No. 23-CR-161 (MAD), 2023 WL 8373566, at *2 (S.D.N.Y. Dec. 4, 2023) (quoting *Parker v. Reda*, 327 F.3d 211, 214–15 (2d Cir. 2003)); *see also Davis v. City of New York*, 959 F. Supp. 2d 427, 435

(S.D.N.Y. 2013) ("[T]he standard example of a record of a regularly conducted activity under Rule 803(6) is a brief record of regularly recorded information, such as . . . data in an inventory.").

"'The custodian need not have personal knowledge of the actual creation of the document' to lay a proper foundation." *Conde*, 134 F.4th at 88 (quoting *Komasa*, 767 F.3d at 156). "Nor is there any requirement under Rule 803(6) that the records be prepared by the party who has custody of the documents and seeks to introduce them into evidence." *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995) (citation omitted). "The rule requires only that the witness is 'familiar with the record keeping procedures of the organization' and 'understands the system.'" *Figueroa*, 2023 WL 8373566, at *2 (quoting *United States v. El Gammal*, 831 Fed. App'x. 539, 543 n.10 (2d Cir. 2020)); *see also Phoenix Assocs. III*, 60 F.3d at 101 (finding business records admissible under Rule 803(6) because the witness was "sufficiently familiar with the business practice" of the records-producing entity and "his testimony indicated that the 'records were made as part of that practice'" (quoting *United States v. Rosenstein*, 474 F.2d 705, 710 (2d Cir. 1973))).

"The Second Circuit has adopted 'a generous view' of the business records exception, emphasizing that 'Rule 803(6) favors the admission of evidence rather than its exclusion if it has any probative value at all.'" *Figueroa*, 2023 WL 8373566, at *1 (first quoting *United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995); and then quoting *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010)). "Generally, objections that an exhibit may contain inaccuracies, ambiguities, or omissions go to the weight and not the admissibility of the evidence." *United States v. Chang*, 574 F. Supp. 3d 94, 101 (E.D.N.Y. 2021) (quoting *Am. Equities Grp., Inc. v. Ahava Dairy Prods. Corp.*, No. 1-CV-5207 (RWS), 2004 WL 870260, at *11 (S.D.N.Y. Apr. 23, 2004)).

Here, the Court can rely on Brown's testimony to conclude that the Business Records contain "sufficient indicia of trustworthiness to be considered reliable." *Palmer*, 2025 WL 2978633, at *9 (quoting *Conde*, 134 F.4th at 87–88). Brown's testimony demonstrates that the records introduced from Saxon Mortgage Services, Carrington Mortgage Services, Lend America, Rushmore Loan Management Services, Planet Home Lending, and FCI—the current loan servicer—were "kept in the course of a regularly conducted business activity." *Parker v. Reda*, 327 F.3d at 215 (citation omitted); *see also* Tr. at 14:15–16:17, 18:4–10, 18:15–19:16, 20:3–21:1, 21:17–22:15, 24:9–25:4, 25:22–29:13. The Court can also conclude from Brown's testimony "that it was the regular practice of [those] business activit[ies] to make the record[s]." *Figueroa*, 2023 WL 8373566, at *2. Indeed, these loan servicers' continuous accounting of the Note at issue is the very kind of business record—"data in an inventory"—that courts consider "the standard example of a record of a regularly conducted activity under Rule 803(6)." *Davis*, 959 F. Supp. 2d at 435.

As explained above, Rule 803(6) "requires only that the witness [be] 'familiar with the record keeping procedures of the organization' and 'understand[] the system.'" *Figueroa*, 2023 WL 8373566, at *2 (quoting *El Gammal*, 831 Fed. App'x. at 543 n.10). Brown's testimony reflects as much, especially with regard to FCI. *See* Tr. at 25:22–29:13. Brown testified that FCI is a "professional" and well-known servicer that is "very accurate in their records." *Id.* at 28:7–9. He stated that he is broadly familiar with FCI's record keeping procedures. *See id.* at 28:10–17 (explaining that FCI creates its records "from the original documents"). He explained that he found FCI's records to be trustworthy, found no inconsistencies in them that would prevent him from relying on them, and incorporated them into his own business practices. *Id.* at 28:21–29:10; *see also United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992) ("Even if the document is originally created by another entity, its creator need not testify when the document has been

incorporated into the business records of the testifying entity." (citation omitted)); *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 09-CV-5935 (MEA), 2011 WL 3874878, at *15 (S.D.N.Y. Aug. 31, 2011) ("[T]he Second Circuit has stated that business records are admissible if witnesses testify that the records are integrated into an office's records and relied upon in its day-to-day operations." (quoting *United States v. Mendel*, 746 F.2d 155, 166 (2d Cir. 1984)) (cleaned up)); *Atl. Specialty Ins. Co. v. Coastal Env't Grp.*, 368 F. Supp. 3d 429, 451 n.7 (E.D.N.Y. 2018) ("Third-party records may be admitted under the business records exception[] where those records have been integrated into another business entity's records and relied on by the business entity." (internal citation omitted)).

Particularly given the Second Circuit's "generous view" of the business records exception, *Strother*, 49 F.3d at 874 (citation omitted), and the fact that the Records' probative value is especially high in this case, *see Kaiser*, 609 F.3d at 574, the Court finds that the Business Records are admissible under Rule 803(6).

The Court also finds that the Business Records and the trial record are, together, sufficient to establish default. Defendants rely heavily on a case from the Eastern District to argue otherwise. *See* Defs. Mem. at 16–19 (discussing *FTS Cap., LLC v. Stuyvesant Constr. Corp.*, 798 F. Supp. 3d 328 (E.D.N.Y. 2025)). But that case is not controlling and differs from this case in meaningful ways. Critically, in that case, the Eastern District court stressed that the plaintiff "did not offer any admissible business records to establish whether the loan was in default" during the relevant time period and relied entirely on an assumption that the alleged default had, in fact, occurred. *FTS Cap.,* 798 F. Supp. 3d at 342–43; *see also Deutsche Bank National Trust Co. v. Saavedra*, 214 N.Y.S.3d 94, 97 (2d Dep't 2024)). The court underscored that the "trial record [did] not include any mortgage servicing records detailing the history of the loan" for nearly eight years leading up to the lawsuit—including during the time encompassing

the alleged default date of January 1, 2014. *FTS Cap.,* 798 F. Supp. 3d at 330, 339, 343; *see also id.* at 341 ("Plaintiff ultimately failed to establish the balance of the loan for any date after February 20, 2012."). Moreover, a six-year gap in the mortgage servicing records prior to the alleged default date raised further doubts about whether the loan was actually in default. *See id.* at 335–36. Plaintiff's sole witness "essentially[] assum[ed] that the default continued from 2008 to January 1, 2014, based on the records he received from the prior servicer." *Id.* But the trial record contained "no precision as to when each entity received the Note." *Id.* at 342. The record did not even establish when the party that originally commenced the action took possession of the note. *See id.* at 330, 339. Instead, the original plaintiff merely "belie[ved] that the loan was in default when he decided to commence the[] proceedings." *Id.* at 343.

To support its reasoning, the *FTS* court pointed to an analogous Second Department decision wherein the plaintiff relied on a loan payment history that only reflected account transactions beginning *after* the alleged default date. *See FTS Cap.*, 798 F. Supp. 3d at 342–43 (citing *Saavedra*, 214 N.Y.S.3d at 97). On that basis, the Second Department "affirmed the lower court's ruling that the plaintiff had failed to establish its *prima facie* case for default." *FTS*, 798 F. Supp. 3d at 342 (citing *Saavedra*, 214 N.Y.S.3d at 97).

Here, by contrast, Plaintiff has submitted sufficient documentation to demonstrate that Defendants are in default. The mortgage servicing records, while "disjointed," Def. Mem. at 2, do not contain the kinds of temporal gaps that were central to the *FTS* analysis, *see* P-9 at 281–814. Plaintiff's mortgage servicing records include records from every year between at least 2008 and 2025, absent 2012 and 2013 (although records also reflect payments due and missed during those years). *Id.* These records, therefore, reflect time periods before and after the relevant Advanced Delinquency Date of April 1, 2011. *See id*; *see also id.* at 516 (including a mortgage loan statement from January 8, 2008, just seven days after the initial Delinquency Date,

reflecting the full $440,800 balance and an unpaid payment due as of the Delinquency Date). Plaintiff's mortgage servicing records also make repeated reference to both the Delinquency Date and the Advanced Delinquency Date. *See, e.g.*, *id.* at 516–23 (listing, on numerous statements, a loan due date of January 1, 2008); *id.* at 529–646 (explaining dozens of times that Defendants were "delinquent on [their] mortgage loan, dating to 01/01/2008"); *id.* at 651–761 (same, dating the loan to "04/01/2011"); *id.* at 766–80 (listing, on numerous statements, a loan due date of April 1, 2011). Plaintiff did not have to "assum[e]," then, that the loan was in default when it was assigned to him. *FTS Cap.*, 798 F. Supp. 3d at 336.

More tellingly, Defendants themselves admitted default at trial. Defendant Datiz testified that he signed the Note on November 30, 2006, for a loan amount of $440,800; understood that he had a legal obligation to ensure that the loan was paid; did not make a payment on the loan; and knew that his brother-in-law, Defendant Amarante, made payments on the loan for only "approximately ten months." Tr. at 105:1–109:21; *accord. id.* at 120:9–12, 121:4–13, 126:12–16, 134:1–21. Amarante, meanwhile, testified that he signed the Mortgage; similarly understood that he "had to pay the mortgage"; made approximately "ten [or] eleven" payments at "the beginning of the loan;" and then made no further payments. *See id.* at 138:23–140:19. Amarante also testified that he was unaware of any additional payments made by Datiz on the loan. *Id.* at 140:20–22. The Note called for payments of $2,755 per month for the first 120 months, followed by monthly payments of $3,551.05. P-1 at 2; *see also* Tr. at 108:16–22. By their own testimony, then, Defendants admitted that they have defaulted on the loan: Ten or eleven payments of $2,755 does not come close to fulfilling Defendants' loan obligations. *See* P-1 at 2. Defendants' testimony alone is therefore enough to establish default in this case.

Defendants' counsel acknowledged as much at trial. Towards the end of the proceedings, Defendants' counsel clarified that—given his clients' testimony—Defendants were not disputing

that Plaintiff satisfied all elements for mortgage foreclosure. *See* Tr. at 159:1–17. Defendants were contesting "[w]hat the damages are and whether the plaintiff can prove damages through admissible evidence," he explained, not disputing that they were in default. *Id.* at 159:14–15. The following exchange is particularly illustrative:

> THE COURT: [O]n the issue of just liability with respect to mortgage foreclosure, if the elements of that are, one, the existence of a mortgage; two, a promissory note; and, three, evidence of a default on the note by the mortgagor, is there a disagreement that those three elements have been proven even through your clients' testimony?
>
> MR. PETROFF: I don't believe there is a disagreement as to that, your Honor.
>
> THE COURT: All right. And so there is no disagreement as to liability.

*Id.* at 159:1–10.

All told, then, the trial record amounts to far more than the kinds of "general allegations [that] are generally insufficient to establish default." *FTS Cap.*, 798 F. Supp. 3d at 342 (citation and internal quotation marks omitted). It includes hundreds of pages of documentation about the loan's history, reflecting non-payment across decades and, critically, an admission of default from Defendants and their counsel. *See generally* P-9; Tr. 105:1–109:21, 120:9–19, 121:4–13, 126:12–16, 134:1–21, 138:23–140:22. The trial record is far more substantial than what was before the Court on summary judgment. *Compare* ECF No. 28 *with, e.g.*, P-9, Tr. On that record, the Court overrules Defendants' objections, admits the Business Records into evidence, and concludes that Defendants are in default. Plaintiff has therefore established his claim.

## II. Plaintiff's Foreclosure Action Fails Pursuant to RPAPL Section 1306

Nonetheless, Plaintiff failed to satisfy a condition precedent to bringing this suit under Section 1306 of the New York Real Property Actions and Proceedings Law. And for this reason, the Court must find in Defendants' favor in this action.

The Court explains why in three sub-parts. First, the Court addresses Plaintiff's argument that because the loan at issue was not a "home loan" pursuant to RPAPL Section 1304, Plaintiff could not have violated Section 1306. The Court concludes that the loan is, indeed, a "home loan" under Section 1304. Second, the Court finds that Plaintiff has violated Section 1306—irrespective of whether the loan constituted a "home loan" for Defendant Datiz. And third, the Court concludes that Section 1306's plain language and strict construction necessitate finding in Defendants' favor.

### A. The Loan Is a "Home Loan"

Section 1304 provides that "with regard to a home loan, at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower, or borrowers . . . including mortgage foreclosure, such lender, assignee or mortgage loan servicer shall give notice to the borrower." *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 555 (2021) (quoting RPAPL § 1304(1)). "In addition to the [Section] 1304 notice requirement, RPAPL [Section] 1306 further requires that a foreclosure plaintiff file certain information, within three business days of mailing a [Section] 1304 notice, with a state regulator, the Superintendent of Financial Services." *CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 117 (2d Cir. 2021) (citing RPAPL § 1306(1)). "Among other information, the [Section] 1306 filing *must* include 'the name, address, last known telephone number of the borrower, and the amount claimed as due and owing on the mortgage.'" *Id.* (quoting RPAPL § 1306(2)) (emphasis added). The purpose of the Section 1306 filing with a state regulator is to "provide statistical data permitting [the regulator]

to accurately track and analyze loans at risk of foreclosure and properly allocate foreclosure counseling resources statewide in order to combat the mortgage crisis." *Schiffman*, 36 N.Y.3d at 559–60 (citation omitted).

The parties do not dispute that both Defendants were sent notices pursuant to Section 1304. *See* P-4; Defs. Mem. at 22. Now, however, Plaintiff argues that the loan was not a "home loan" under Section 1304. Pl. Reply at 5–7. Plaintiff contends that new evidence adduced at trial—namely, that the Property was "never" Defendant Datiz's "principal residence"—means that Datiz was not due any notice under Section 1304 and that, therefore, "no . . . filing obligation was triggered" under Section 1306. *Id.* at 7.

The Court is not convinced. Under Section 1304, a "'[h]ome loan' means a loan, including an open-end credit plan, in which:

> (i) The borrower is a natural person;
> (ii) The debt is incurred by the borrower primarily for personal, family, or household purposes;
> (iii) The loan is secured by a mortgage or deed of trust on real estate improved by a one to four family dwelling, or a condominium unit, in either case, used or occupied, or intended to be used or occupied wholly or partly, as the home or residence of one or more persons and which is or will be occupied by the borrower as the borrower's principal dwelling; and
> (iv) The property is located in this state.

RPAPL § 1304(6)(a)(1). Plaintiff argues that the loan does not qualify as a "home loan" because the Property was "never" Datiz's "principal dwelling." Pl. Reply at 5. As Plaintiff correctly highlights, Datiz testified "that he did not purchase the property for himself, did not consider himself its owner, and resided there only intermittently before moving out entirely." Pl. Reply at 7; *see also* Tr. at 105:10–25. Datiz explained that he lived at the Property "for a couple of years on and off." *Id.* at 118:25–119:5.

But even if the debt was not a "home loan" for Datiz, it was undisputedly a home loan for Amarante. Tr. at 139:3–4; *see also* P-4 at 95–96, 109, 141–42 (mailing Amarante the Section 1304 notice at the Property). Plaintiff acknowledges as much. Pl. Reply at 6 ("Datiz's testimony confirms that the true purchaser and occupant of the property was his brother-in-law, Jose Amarante."). And, as Defendants underscore, "where a homeowner defendant has not signed a note that is secured by a mortgage but is referred to as a 'borrower' in the mortgage agreement signed by the homeowner defendant, that defendant is a borrower for the purposes of RPAPL 1304." *Deutsche Bank Nat'l Tr. Co. v. Cincu*, 214 N.Y.S.3d 107, 109 (2d Dep't 2024).[2] Amarante is listed as a "borrower" on the Mortgage, even though he did not execute the Note. P-2 at 2. Accordingly, for the purposes of Section 1304, Amarante is a borrower. Because his principal dwelling is the subject Property, the loan certainly is a "home loan" as to Amarante. *See* RPAPL § 1304(6)(a)(1).

Based on the plain text of the statute, only one borrower who incurred the debt as a home loan under Section 1304 is necessary to trigger Section 1306. Section 1304 applies to lenders, among others, who "commence[] legal action against the borrower, or borrowers at the property address." This statutory text—"borrower, or borrowers"—suggests that the legislature did not intend to poison Section 1304's protections for those borrowers who live in the home simply because another borrower on the loan lives elsewhere. Instead, the statute's protections appear to apply to however many borrowers—plural—qualify under the statute. *See id.* § 1304(1).

---

[2] "[I]n construing New York law, [the Court] is 'bound to apply the law as interpreted by New York's intermediate appellate courts absent persuasive evidence that the New York Court of Appeals, which has not ruled on this issue, would reach a different conclusion." *Freedom Mortg. Corp. v. Cadet*, No. 19-CV-3158 (RRM) (VMS), 2023 WL 6358070, at *5 (E.D.N.Y. Sept. 29, 2023) (quoting *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 139 n.15 (2d Cir. 2018)) (cleaned up).

The Court of Appeals' analysis in *CIT Bank N.A. v. Schiffman* is instructive on this point. *See* 36 N.Y.3d at 558–60. In that case, in order to answer a similar question certified to it by the Court of Appeals for the Second Circuit, the New York Court of Appeals distinguished Sections 1304 and 1306 along these very lines. *See id.* The Court of Appeals concluded that because "the legislature chose to reference only the singular 'borrower' in [Section] 1306" but referenced "the singular and plural" "borrower, or borrowers" in Section 1304, "a filing that includes information about only one borrower is sufficient" under Section 1306. *Id.* at 559–60. This Court can therefore infer that Section 1304 should apply to any "borrower, or borrowers" who falls under its remit.

Relatedly, the statute's disjunctive "or" makes clear that Section 1304 need not apply to *all* "borrowers at the property address" for the statute to take effect. RPAPL § 1304(1). Indeed, the statute begins with the general statement that it applies "with regard to a home loan." *Id.* This language suggests that the legislature intended for the statute to apply to every "borrower, or borrowers at the property address" for whom the loan is a "home loan." *Id.* If the legislature intended a different outcome—that in order for the statute to take effect, the loan must be a "home loan" for every "borrower, or borrowers at the property address"—it would have included different, more precise language to that end. *See id.*

This reading also comports with how the Court of Appeals itself has evaluated the legislature's intent in passing Section 1304: "The legislature enacted RPAPL 1304 in 2008 in response to the mortgage crisis," the Court of Appeals explained, then "expanded [the statute] the following year to cover all home loans." *Id.* at 555 (internal citations omitted). The statute's "ultimate goal" was to "reduc[e] the number of foreclosures" by "increasing the number of borrowers who would benefit from the information provided in the notice and the 90–day period during which the parties could attempt to work out the default 'without imminent threat of a

foreclosure action.'" *Id.* (internal citation and quotation marks omitted). To strip a borrower living in the home that they bought—albeit with someone else's assistance—of Section 1304's protections would therefore run counter to the legislature's intent of "increasing the number of borrowers" covered by the statute and "reducing the number of foreclosures" in the state. *Id.*

Therefore, because the Property was and remains Amarante's "principal dwelling," the subject loan is a "home loan" under Section 1304.

**B. Plaintiff's Section 1306 Filing Was Deficient**

Having established that the loan is a "home loan" under Section 1304, the Court easily concludes that Plaintiff was required to submit a Section 1306 filing. *See* RPAPL § 1306(1). Therefore, whether or not the loan is a "home loan" as to Datiz, Plaintiff's Section 1306 filing was deficient.

Plaintiff argues that because the loan is not a "home loan" as to Datiz, then Datiz "was not entitled to a RPAPL § 1304 notice prior to the commencement of this foreclosure action." Pl. Reply at 7. Plaintiff does not argue that Amarante should also be excluded from Section 1304's protections (lending further credence to the Court's interpretation *supra*). *See id.* at 5–7. In Plaintiff's telling: If Datiz did not merit Section 1304's coverage, Datiz was also never due a Section 1306 filing, so Plaintiff could not have violated Section 1306. *See id.* at 5–7. But upon further inspection, Plaintiff's logic begins to collapse: In this scenario, if only Datiz were barred from Section 1304's protections, Amarante was still due those protections—meaning Amarante should have been the subject of Plaintiff's Section 1306 filing. *See* RPAPL § 1306; *Schiffman*, 36 N.Y.3d at 560 (indicating that, although a Section 1306 "filing that includes information about only one borrower is sufficient under the statute," the filing must still include information about at least one borrower). In other words, because the loan is a "home loan," Plaintiff was required to submit a Section 1306 filing—if not for Datiz, then for Amarante.

Therefore, whether or not the loan qualifies as a "home loan" as to Datiz, the result is the same. If the Court credits, *arguendo*, Plaintiff's position that the property was not Datiz's principal dwelling—and, thus, that the loan was only a "home loan" as to Amarante—Plaintiff was delinquent in submitting his Section 1306 filing because he never filed one for Amarante. *See* Pl. Reply at 7 n.1 ("The RPAPL § 1306 notice was filed solely as to Datiz . . . ."). Alternatively, if the property qualifies a "home loan" as to both Datiz and Amarante, and Plaintiff's actual Section 1306 filing remains the operative filing, that filing also remains defective because Plaintiff failed to include Datiz's telephone number on it. *See* P-6 at 2 (listing Datiz's telephone number as 9999999999); Tr. at 130:24–131:1 (Datiz testifying that his phone number has never been 999-999-9999); ECF No. 46 at 5 ("Plaintiff does not contest the fact that [he] failed to provide an appropriate telephone number, as required by Section 1306."); RPAPL § 1306(2) (making clear that the filing "shall include at a minimum, the name, address, last known telephone number of the borrower . . . .").

Accordingly, under either theory, Plaintiff's Section 1306 filing was deficient.

**C. Section 1306 Requires Strict Compliance**

Ultimately, Plaintiff's deficient Section 1306 filing dooms his case. Plaintiff argues that even if Section 1304 applies and his Section 1306 filing is deficient, the Court should nevertheless decline to find in Defendants' favor because no prejudice resulted from Plaintiff having omitted Datiz's telephone number from the Section 1306 filing. Pl. Reply at 7–12. Plaintiff contends that the Court should eschew the "hyper-technical reading of the statute" advanced by Defendants and refrain from finding for Defendants based on a "minor technical irregularit[y]." *Id.* at 8. But the statute's standard is clear: Compliance with Section 1306 is a "'condition precedent' to commencing a foreclosure action." *Schiffman*, 36 N.Y.3d at 558

(quoting RPAPL § 1306(1)). And, here, Plaintiff has failed to comply with the statute's bottom-line requirements.

Specifically, Section 1306 "provides that as a 'condition precedent' to commencing a foreclosure action, 'each lender, assignee or mortgage loan servicer' file with the superintendent of financial services "within three business days of the mailing of the [S]ection 1304 notice the information required by subdivision two." *Id.* (quoting RPAPL § 1306(1)) (cleaned up). Subdivision two "directs, in relevant part, that 'each filing shall be on such form as the superintendent shall prescribe and shall include at a minimum, the name, address, last known telephone number of the borrower, and the amount claimed as due and owing on the mortgage." *Id.* (quoting RPAPL § 1306(2)) (cleaned up). Again, Plaintiff does not dispute that his Section 1306 filing failed to include Datiz's last known telephone number. Pl. Reply at 8 (admitting that "the borrower telephone number field did not contain a traditional telephone number"); *see also* P-6 (listing Datiz's telephone number as 9999999999); Tr. at 130:24–131:1 (Datiz testifying that his phone number has never been 999-999-9999). Plaintiff thus admits that he has failed to fulfill a clear "'condition precedent' to commencing [this] foreclosure action." *Schiffman*, 36 N.Y.3d at 558 (quoting RPAPL § 1306(1)).

Plaintiff makes another argument: that "the burden rests squarely on Defendants to demonstrate both that Plaintiff's filing was materially defective and that any alleged defect caused prejudice." Pl. Reply at 8. But Plaintiff cites no case law for this proposition. *See id.* And the statute's language is clear: "as a 'condition precedent' to commencing a foreclosure action," *Schiffman*, 36 N.Y.3d at 558 (quoting RPAPL § 1306(1)), "the state law *mandates* that '[e]ach lender, assignee or mortgage loan servicer shall file with the superintendent of financial services . . . the name, address, last known telephone number of the borrower, and the amount claimed as due and owing on the mortgage," *Blue Castle (Cayman) Ltd. v. Miller*, 772 F. Supp. 3d 416, 427

(S.D.N.Y. 2025) (quoting RPAPL § 1306(1)–(2)) (emphasis added). Furthermore, regardless of who bears the burden with respect to Section 1306 compliance,[3] the facts clearly show that Plaintiff did not comply with its terms. *See* P-6.

Numerous courts have applied this "strict" statutory construction. *See Deutsche Bank Nat'l Tr. Co. v. Goetz*, 239 N.Y.S.3d 148, 152 (2d Dep't 2025) ("Compliance with RPAPL 1306 is a condition precedent to the commencement of a foreclosure action . . . . As the plaintiff failed to comply with a condition precedent, the Supreme Court should have granted the defendant's cross-motion, in effect, for summary judgment dismissing the complaint insofar as asserted against him." (citations omitted)); *Bank of New York Mellon v. Peralta*, 238 N.Y.S.3d 230, 231 (2d Dep't 2025) ("[S]trict compliance with the statutory requirement of making the appropriate filing within three business days of the mailing of the RPAPL 1304 notice is required." (citation and quotation marks omitted)); *TD Bank, N.A. v. Oz Leroy*, 995 N.Y.S.2d 625, 629 (3d Dep't 2014) ("Inasmuch as plaintiff admits that it failed to strictly comply with the condition precedent required by RPAPL 1306, and that failure is not excused, the complaint must be dismissed."); *Windward Bora, LLC v. Weiss*, 717 F. Supp. 3d 247, 263 (E.D.N.Y. 2024) ("Compliance with RPAPL § 1304 and § 1306 is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of these conditions."); *Wilmington PT Corp. v. Gray*, No. 19-CV-1675 (AMD) (TAM), 2025 WL 857979, at *8 (E.D.N.Y. Mar. 19, 2025) ("Compliance with § 1306 is a 'precondition of a foreclosure action.' Accordingly, noncompliance with this provision 'is sufficient to deny foreclosure.'" (first

[3] Plaintiff argues that Defendants bear the burden of proving their affirmative defense pursuant to Section 1306, while Defendants argue that Plaintiff bears the burden of demonstrating compliance with the statute's requirements. *Compare* Defs. Mem. at 21 *with* Pl. Reply at 8. Regardless of the burden, the result is the same: Plaintiff admits, and the record demonstrates, that he did not list either of Defendants' "last known telephone number" on his Section 1306 filing. P-6; *see also* RPAPL § 1306(2).

quoting *Schiffman*, 948 F.3d at 535; and then quoting *Freedom Mortg. Corp. v. Bullock*, No. 19-CV-664 (NGG) (SJB), 2022 WL 18299810, at *3 (E.D.N.Y. Mar. 11, 2022), *report and recommendation adopted*, 2022 WL 4445399 (E.D.N.Y. Sept. 23, 2022))); *Blue Castle (Cayman) Ltd. v. Yee*, No. 23-CV-1724 (LDH) (LB), 2024 WL 4485498, at *4 (E.D.N.Y. Feb. 20, 2024), *report and recommendation adopted*, 2024 WL 4344788 (E.D.N.Y. Sept. 30, 2024), *reconsideration denied*, 2025 WL 2793648 (E.D.N.Y. Sept. 30, 2025) ("Plaintiff's failure to strictly comply with § 1306—a condition precedent to commencing a residential foreclosure proceeding—is fatal to its motion for a default judgment.") (collecting cases); *Bullock*, 2022 WL 4445399, at *3 ("[Plaintiff] failed to meet its initial burden of demonstrating the absence of material issues as to its strict compliance with [S]ections 1304 and 1306, precluding a grant of foreclosure relief." (citations and internal quotation marks omitted)); *PHH Mortg. Corp. v. Rossi*, No. 25-CV-948 (BKS) (ML), 2026 WL 1162605, at *4 (N.D.N.Y. Apr. 29, 2026) ("[C]ourts have required strict compliance with [Section 1306]." (citation omitted)).

Plaintiff's appeal to Section 1306's purpose does nothing to alter this conclusion. *See* Pl. Reply at 8–10. Plaintiff relies on *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, to argue that Section 1306 was not intended to support such a "technical reading of the statute." Pl. Reply at 8. "The New York Court of Appeals has made clear that the purpose of RPAPL § 1306 is administrative and informational in nature, not to create substantive borrower rights capable of invalidating a foreclosure based on minor technical irregularities in the filing," Plaintiff argues. *Id.* And, indeed, the Court of Appeals has explained that the purpose of the statute is to allow a state regulatory agency to track and analyze loans at risk for foreclosure and allocate resources across the state to combat foreclosures. *See Schiffman*, 36 N.Y.3d at 559–60.

However, the Court's reading of Section 1306 does not create substantive borrower rights; it merely confirms and upholds the statute's clear preconditions for foreclosure. *See*

RPAPL § 1306. And Plaintiff's reading of *Schiffman* ignores the Court of Appeals' analytical framework—which compels a different result. *See* 36 N.Y.3d at 558–59. Because "'the starting point in any case of interpretation must always be the language itself,' with due consideration given to the statutory purpose and history, including the objectives the legislature sought to achieve through its enactment," the Court must start with Section 1306's text. *Id.* at 559 (quoting *Majewski v. Broadalbin–Perth Cent. School Dist.*, 91 N.Y.2d 577, 583 (1998)). And the statutory requirements remain clear: "the state law *mandates* that 'each lender, assignee or mortgage loan servicer shall file with the superintendent of financial services the name, address, [and] last known telephone number of the borrower." *Blue Castle*, 772 F. Supp. 3d at 427 (quoting RPAPL § 1306(1)–(2)) (cleaned up) (emphasis added). Even giving "due consideration" to the legislative purpose behind Section 1306, the Court concludes that the statute's plain language requires that Plaintiff include a real "last known telephone number" in his Section 1306 filing "as a 'condition precedent' to commencing [his] foreclosure action." *Schiffman*, 36 N.Y.3d at 558–59.

Finally, Plaintiff points to one recent First Department case and to a Nassau County Supreme Court case that relies on the former case as (limited) instances in which courts have found that omitting a borrower's telephone number from a Section 1306 filing was not dispositive. *See* ECF No. 79 (first citing *AS Helios LLC v. Chauhan*, 250 N.Y.S.3d 543 (1st Dep't 2026); and then citing *U.S. Bank Trust N.A. v. Lalli*, 2026 WL 1752083 (N.Y. Sup. Ct. May 27, 2026)). "The split between the First Department and Second Department complicates the matter[;] however, the split does not change the Court's task at hand: to predict how the Court of Appeals would decide the issue." *Covington v. Childtime Childcare, Inc.*, No. 23-CV-710 (BKS), 2024 WL 2923702, at *4 (N.D.N.Y. June 10, 2024) (citing *Pacho v. Enter. Rent-A-Car Co.*, 572 F. Supp. 2d 341, 346 (S.D.N.Y. 2008)); *see also Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 347 (S.D.N.Y. 2024) (quoting *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116–17 (2d Cir.

2000)) ("[W]hen there is 'an apparent split in authority among the Appellate Divisions,' a federal court is not bound by the law of the department that would apply if the case were filed in state court where the federal court sits, but rather must predict 'how the Court of Appeals would rule.'").

As noted above, cases in the Second and Third Departments make clear that compliance with Section 1306 is a required condition precedent to commencing a foreclosure action. *See, e.g.*, *Goetz*, 239 N.Y.S.3d at 152; *Peralta*, 238 N.Y.S.3d at 231 ; *U.S. Bank, Nat'l Ass'n v. Nathan*, 104 N.Y.S.3d 144, 147–48 (2d Dep't 2019); *Hudson City Sav. Bank v. Seminario*, 51 N.Y.S.3d 159, 160 (2d Dep't 2017); *TD Bank, N.A. v. Oz Leroy*, 995 N.Y.S.2d 625, 629 (3d Dep't 2014). Federal courts interpreting these cases have likewise strictly construed the statute. *See, e.g.*, *Windward Bora*, 717 F. Supp. 3d at 263; *Wilmington PT Corp.*, 2025 WL 857979, at *8; *Blue Castle*, 2024 WL 4485498, at *4; *Bullock*, 2022 WL 4445399, at *3; *Rossi*, 2026 WL 1162605, at *4.

The recent First Department case that departs from these holdings, meanwhile, simply concludes that "defendants failed to demonstrate that the purported omissions in the [S]ection 1306 filing of defendants' last known phone number, which is redacted in the record, . . . show that [the] plaintiff did not comply with the requirements of RPAPL 1306, let alone that these omissions would warrant dismissal." *AS Helios* 250 N.Y.S.3d at 544 (internal citation omitted). Not only does the court provide no reasoning for its decision, but its limited analysis obscures what the "purported omissions" included in that case. *See id.* Here, by contrast, the record is clear: Plaintiff failed to include Defendants' "last known phone number" in his filing and, even more saliently, acknowledges that he did not comply with Section 1306's requirements. *See* Pl. Reply at 8; P-6.

"Although this Court cannot predict with certainty how the New York Court of Appeals would rule," the weight of the precedent and the statute's plain language suggest that the Court of Appeals would construe Section 1306 to require strict compliance. *Zachary*, 716 F. Supp. 3d at 350. Therefore, because the evidence makes clear that Plaintiff failed to include Defendants' "last known telephone number" in their Section 1306 filing, the Court finds in Defendants' favor on their affirmative defense.

### III. The Court Need Not Address Defendants' Second Defense

Having concluded that it must find in Defendants' favor based on their Section 1306 defense, the Court need not discuss Defendants' last defense, brought under RPL Sections 421 and 294(1). *See* Defs. Mem. at 23–24.

### IV. Defendants Are Entitled to Attorneys' Fees

Under RPL Section 282, "when a mortgage on residential real property provides that the mortgagee may recover attorneys' fees as a result of the mortgagor's default, the mortgagor can recover attorneys' fees for a successful defense of a foreclosure action." *NDF1, LLC v. Baratta*, No. 24-CV-4009 (NSR), 2026 WL 787942, at *11 (S.D.N.Y. Mar. 19, 2026) (citation omitted). "In order to collect attorneys' fees, the mortgagor must be the 'prevailing party' in the foreclosure action." *Id.* (quoting *Bank of Am., N.A. v. Destino*, 29 N.Y.S.3d 56, 57 (2d Dep't 2016). Here, the Mortgage unquestionably contains such a provision. *See* P-2 ¶ 22. Having successfully defended this foreclosure action, then, Defendants are entitled to attorneys' fees. *See* RPL § 282.

## CONCLUSION

For the reasons stated above, the Court finds in favor of Defendants based on their affirmative defense under RPAPL Section 1306 and concludes that Defendants are entitled to attorneys' fees. The Clerk of Court is respectfully directed to enter judgment accordingly.

Pursuant to Federal Rule of Civil Procedure 54(d), Defendants may submit a motion for attorneys' fees within 14 days after the entry of judgment. Any motion must include contemporaneous time records. Any opposition to the motion shall be filed 14 days thereafter, and any reply is due 7 days after the opposition is filed.

Dated: September 30, 2026
New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge